IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PASTOR RAMOS ROMAN,
    Plaintiff,

v.

COMMONWEALTH OF PUERTO RICO,
    Defendant,

v.

UNIVERSIDAD CARLOS ALBIZU, INC.,
    Third-party defendant,

Civil No. 08-1378 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

    Above plaintiff Pastor L. Ramos-Román (hereinafter "Ramos-Román") filed an Amended Complaint against the Commonwealth of Puerto Rico (hereinafter "the Commonwealth"), as his employer, for sexual harassment and hostile work environment. (Docket No. 6, Amended Complaint). Plaintiff Ramos-Román avers he was discriminated and endured retaliation after complaining of harassment from third-party defendant Griselle M. Negrón-Rodríguez (hereafter "Negrón")[1] who was at the time a temporary employee under contract of Universidad Carlos Albizu, Inc. (hereafter "Universidad")[2] which held a service contract with the Department of Corrections of the Commonwealth of

---

[1] Ms. Negrón has filed a separate motion for summary judgment which will be the object of a separate Opinion and Order.

[2] Universidad Carlos Albizu, Inc. is a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico.

Puerto Rico[3] to provide education services to its employees, including plaintiff Ramos-Román.

The Court denied a previous motion for summary judgment finding the EEOC claim filed by plaintiff Ramos-Román was timely and covered any related subsequent conduct by defendant, including retaliation, but allowed the defendant Commonwealth, upon discovery, to seek summary judgment on the merits. (Docket No. 19). The Court also denied on August 26, 2010, through an Opinion and Order, a request for dismissal based on plaintiff Ramos-Román's failure to exhaust the administrative claims for sexual harassment and retaliation, as well as Eleventh Amendment immunity upon finding that as to Title VII claims state immunity had been abrogated by Congress. (Docket No. 123).[4] The claims under state law filed by plaintiff were subject of partial judgment of dismissal. (Docket No. 48).

Now pending before this Magistrate Judge is the request for summary disposition filed defendant Commonwealth of Puerto Rico. (Docket No. 135). On March 30, 2011. Plaintiff Ramos-Román filed his opposition to summary judgment of defendant Commonwealth. (Docket No. 152).[5]

---

[3] The Commonwealth of Puerto Rico is a self-governing unincorporated territory of the United States and the Department of Correction and Rehabilitation, plaintiff's direct employer, is considered an arm or *alter ego* of the Commonwealth.

[4] The failure to exhaust was raised by third-party defendant Negrón and joint by third-party plaintiff Universidad Carlos Albizu.

[5] The parties had already consented to Magistrate Judge exercising jurisdiction in this case.

As grounds for its second request for summary disposition, the Commonwealth submits --insofar as exhaustion of administrative proceedings prior to the filing of this case-- that the EEOC charge filed by plaintiff Ramos-Román was one solely for retaliation and not for sexual harassment. Therefore, the Commonwealth considers plaintiff failed to exhaust administrative remedies in regards to the sexual harassment claim against the Department of Corrections as alter ego of the Commonwealth. Defendant Commonwealth further submits the Department of Corrections had in effect a sexual harassment policy to address plaintiff's complaint and it took immediate, appropriate and reasonable action regarding plaintiff Ramos-Román's complaints taking into consideration the alleged harasser was not an employee of the Commonwealth.

Plaintiff Ramos-Román's objection to summary disposition as requested by the Commonwealth qualifies and/or denies the statement of alleged undisputed facts and includes a statement of additional facts not addressed by the Commonwealth. It further submits that, as to the state law pendent claims dismissal requested by the Commonwealth, these claims were dismissed more than two (2) years ago. (Docket Nos. 49).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[6]

Pursuant to the language of the applicable rule, as amended in 2010, the party bears the two-fold burden of showing that there is "no genuinely disputed." The party may also sow that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) since the standards for granting summary judgment remain unchanged under the 2010 amendments.

After the moving party has satisfied this burden, the *onus* shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id*. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id*.

At all times during consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all

---

[6] On April 28, 2010, the Supreme Court of the United States approved amendments to Federal Rule of Civil Procedure 56, effective December 1, 2010. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases. *See* Ophthalmic Surgeons, Ltd. v. Paychecx, Inc., 632 F.3d 31 (1st Cir. 2011).

reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

In summary judgment a court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits. 10 A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Prac. & Proc. Civ*. §2722 at 382 (3d ed. 1998).

## FINDINGS OF FACT - UNDISPUTED/DISPUTED FACTS

**A.     Exhaustion of Administrative Proceedings**.

Defendant Commonwealth submits plaintiff Ramos-Román failed to exhaust administrative proceedings by not including any allegation of sexual harassment in the discrimination charge filed with the EEOC. The charge submitted referred solely to retaliation. Plaintiff Ramos-Román filed a retaliation claim with the EEOC on September 21, 2006, but no sexual discrimination charge appears to have been filed as claimed in the Complaint in 2005. *Defendant's Exhibit 1*.

Plaintiff Ramos-Román opposed above fact and made reference to this Court's previous findings in a motion to dismiss as to proper exhaustion of administrative claims. In summary, the charge form with the EEOC does not provide for a box designating "sexual harassment." However, the body of the charge contained allegations describing the harassment and retaliation. Specific reference is made therein that plaintiff Ramos-Román had been a victim of sexual harassment by Ms. Negrón and that he complained to the Department of Corrections, his employer. It also referred to acts of the employer, the Administration of Corrections, for retaliation upon the complaint of sexual harassment. A previous documentation on record also shows that: the Administration of Corrections, in a letter dated August 24, 2006, to the Universidad Carlos Albizu made reference to a complaint for sexual harassment in reference to the discrimination charge filed by plaintiff Ramos-Román for sexual harassment; it acknowledged the Administration of Corrections had conducted an investigation and reached the conclusion Ms. Negrón had indeed caused a hostile work environment caused by sexual harassment. (Docket No. 60, Exhibit 60-2).

**B.    Employer's Liability and Timely Corrective Actions.**

**1. Sexual Harassment Complaint.**

Defendant Commonwealth has raised, in the alternative, that it took immediate action upon finding about plaintiff Ramos-Román's sexual harassment complaint. More so since the acts of harassment were undertaken by a third-party, not by defendant's representatives or employees. Under such factual situation, the standard of the employer's

liability is whether it knew or should have known of the conduct and it failed to take immediate and appropriate corrective action.

It is uncontested that Ms. Negrón did not supervise plaintiff Ramos-Román and was a temporary contract employee of the Carlos Albizu University, which in turn had contracted with the Administration of Corrections to provide assistance and consulting services in the creation, management, curricula and development of academy for employees of Department of Corrections.

Upon complaining of the harassing conduct to Ms. Negrón's supervisor at the University Carlos Albizu, plaintiff notified the Department of Corrections in writing on February 28, 2005. (Docket No. 134, Commonwealth's Exhibit 11 and 12). By March 15, 2005, the Department of Corrections notified the president of the Universidad Carlos Albizu that an internal investigation as to plaintiff Ramos-Román's complaint was to be conducted. (Exhibit 13).

By March 1, 2005, the Commonwealth submits it had instructed plaintiff Ramos-Román, what it considered a corrective measure, to avoid contact with Ms. Negrón and not visit her work area, namely, the library. (Exhibit 1; Exhibit 8).[7] On March 16, 2005, the Department of Corrections referred plaintiff Ramos-Román's complaint of sexual harassment to its Investigation Division. (Exhibit 15).

Since Ms. Negrón's contract had expired by June 30, 2005, said fact was informed to the investigating officer in charge of plaintiff Ramos-Román's complaint. *Exhibit 16*.

---

[7] Universidad Carlos Albizu on the other hand had oriented the alleged harasser, Ms. Negrón, not to talk directly to plaintiff and not to enter the building where plaintiff worked, unless accompanied.

On December 22, 2005, a report was rendered upon the conclusion of the investigation, finding in part that Ms. Negrón had sexually harassed plaintiff Ramos-Román. It also concluded that, as soon as plaintiff's complaint was known, the concerned parties had taken corrective measures to protect plaintiff Ramos-Román from further sexual incidents. (Exhibit 17).

By August 18, 2006, the Department of Corrections notified the Universidad Carlos Albizu about the internal investigation conducted requesting to take all necessary measures to assure Ms. Negrón no longer provided services in any facility of the Department. (Exhibit 18). On August 26, 2006, plaintiff Ramos-Román was notified by the Department of Corrections about the results of the investigation, indicating his complaint had been closed since June 30, 2005, when Ms. Negrón had stopped working for Universidad Carlos Albizu. (Exhibit 19).

Plaintiff Ramos-Román's objection to allegations of the Department of Correction as to liability when dealing with a third-party harassment and taking corrective action are substantiated by defendant Commonwealth's own record and documents submitted in support of summary disposition. If anything, there are genuine disputed issues on whether the above referred factual scenario would be considered as prompt and appropriate in dealing with claims of sexual harassment.

The Department of Correction's alleged orientation to plaintiff Ramos-Román to avoid Ms. Negrón, as the harasser, is not consonant with the predatory actions the parties were already made aware. Still, it was not reasonable to force upon a victim such as Ramos-

Román, by way of mere orientation, to avoid the harassing behavior and consider this initial step as one to preclude liability or as timely corrective measure, regardless that Ms. Negrón was not the employee of the Department of Corrections.

The allegation as to there being a sexual harassment policy in the Administration of Correction is also debated. The Department of Corrections submits having a sexual harassment policy in its Normative Memorandum OA-PER-92-07, wherein acts of alleged harassment are to be notified in writing within thirty (30) days and requires the complaint to be investigated promptly. *Deft's undisputed ¶¶16, 17.*

Plaintiff Ramos-Román submits there was no sexual harassment policy and grievance procedure when he first presented the complaint to the Department of Corrections. In addition, the investigator assigned to the case, Mr. Juan Cardona, by the Administration of Corrections was not provided with the sexual harassment policy but saw it for the first time when preparing for the deposition as part of the discovery in the case. *Plaintiff's ¶16; Exhibit 2, Cardon's depo. pp. 9, 14-15.*[8]

Ramos-Román also opposed defendant Commonwealth's summary judgment by submitting having evidence to dispute Commonwealth's averments since the alleged preventive measures did not deter the harasser, for she repeatedly continued to invade his office space even after her contract with the Universidad had concluded. The record shows plaintiff Ramos-Román made known to the Department of Corrections since at least

---

[8] Nowhere in the undisputed statement does the Commonwealth submit having evidence of acknowledgment by plaintiff Ramos-Román as to the claimed sexual harassment policy nor that the written document was notified to all employees, including plaintiff or that training or information was provided in regards to said policy.

February 25, 2005 about acts of harassment, which continued long after Ms. Negrón had stopped working with Universidad Carlos Albizu on June 30, 2005. These actions were additionally notified without recourse for plaintiff Ramos-Román. With knowledge of the controversy, the Department of Corrections continued to send plaintiff Ramos-Román to conferences together with the harasser. *Plaintiff's disputed ¶24; Exhibit 5, L. Rivera's depo. p. 29.*

Plaintiff Ramos-Román aver his complaint was not resolved in a timely manner by the Administration of Corrections. Although plaintiff Ramos-Román filed the sexual harassment complaint or charge on February 2005 and defendant Commonwealth was timely aware of same, it was not until August of 2006 the Department of Correction sent a written report stating, even acknowledging the sexual harassment issue, that it had dismissed the complaint back on June 2005 when it considered the harasser no longer present. Still, the report referred to in this written communication to plaintiff Ramos-Román of August of 2006 stated the investigation had been completed by December 2005, some nine (9) months earlier but not notified to plaintiff. *Plaintiff's disputed ¶25; Exhibit 16.*

The Department of Corrections took some sixteen (16) months to conclude its investigation and waited some nine (9) months after the report of investigation was available, to inform plaintiff Ramos-Román of the results. These actions are not considered by plaintiff or this Court as a defense of timely corrective action but rather as evidence of foot dragging and disingenuous attempt to make the claim become moot or negligently

Case 3:08-cv-01378-CVR   Document 161   Filed 04/14/11   Page 11 of 18

Pastor L. Ramos Román v. Commonwealth, et al
Civil No. 08-1378 (CVR)
Opinion and Order
Page No. 11

handled, while at the time allowing retaliatory acts in employment claimed by plaintiff Ramos-Román as a result of having initiated the complaint of harassment. *Plaintiff's disputed ¶¶29-32*.

## 2. Retaliation Claim.

Defendant Commonwealth submits plaintiff Ramos-Román has failed to establish a claim of retaliation for there was no adverse employment action taken, Ramos-Román's salary and position as Executive Officer were not affected, and even if any employment action alleged as discriminatory was taken, it was for non-discriminatory reasons, that is, as a result of a reorganization in the year 2005 through the whole agency. *Defendant's Undisputed ¶34; Exhibit 22, Organizational Model 2005*.

The Commonwealth submits that plaintiff Ramos-Román's transfer on November 14, 2005, to the Maximum Security Institution in Ponce to perform duties unrelated to the academic area, were as a result of a Reorganization Plan which was conducted through out the agency, when the Administration of Corrections was merged with the Department of Corrections. *Deft's Undisputed ¶ 34-36, ¶37-40*.

The Commonwealth submits that, under said Reorganization, plaintiff's position as Executive Officer was to be evaluated. *Id. ¶42*. Several positions occupied in the academic area related to Universidad Carlos Albizu's contract were considered not necessary. *Id. ¶¶45-46*. Plaintiff Ramos-Román's designation was not the only one affected, his designation as Director was merged with a newly created position of Chief of Academy. *Deft's Undisputed ¶¶ 47-51*.

Pastor L. Ramos Román v. Commonwealth, et al
Civil No. 08-1378 (CVR)
Opinion and Order
Page No. 12

---

Defendant also avers plaintiff Ramos-Román's evaluation and recommendation, instead of being demoted to a teaching position he previously occupied in Ponce Correctional was to assign specific functions in the same position he held of Executive Officer in the Program and Services Division, work that was related to the academic area he previously performed. *Id. ¶52*.

When plaintiff Ramos-Román filed his sexual harassment complaint he was a probationary employee as Executive Officer. After said complaint was filed, on August 26, 2005 and after evaluation, he was granted permanent position. *Id. ¶¶36-59*. Plaintiff had also received a salary increase on July 1, 2007, as well as all managerial employees and a non-recurrent bonus on May 20, 2008. No employee at the Department of Corrections was approved salary increases during the period of 2005 through March of 2007. *Id. ¶66*.

As to claims that other employees who were plaintiff Ramos-Román's witnesses as to the complaint were transferred, the Commonwealth submits other employees who were not witnesses were also transferred to different institutions of the Department of Corrections. *Deft's Undisputed ¶72*.

Plaintiff Ramos-Román in his opposition addresses the pattern of retaliation claimed since he complained about the harassment. He was questioned by Ms. Civilles, the harasser's supervisor, if he liked her and why he did not jump at the opportunity offered, subsequently questioning plaintiff's sexuality and orientation for not accepting the sexual proposals.

Plaintiff contends he was also sent to a type of exile by being forced to isolation in his office for some sixteen to eighteen (16-18) months, being segregated from co-workers, having other employees removed if they would visit plaintiff's office. *Plaintiff's Disputed ¶23; Plaintiff's additional statement ¶¶104, 107.* Other employees who assisted or were to testify for plaintiff Ramos-Román suffered the same fate as being exiled and removed from their posts. *Id.*; *Docket No. 153, ¶22-23. Plaintiff's Exhibit 1, Ramos' depo., pp. 18-20, p. 43, 50-51, 63, 74.* During the period of some sixteen (16) months, the Administration of Corrections displayed tolerance to Ms. Negrón's harassing conduct and unjustified lack of timely action as to plaintiff Ramos-Román's complaints which contributed to the hostile work environment plaintiff had to endure.

Plaintiff Ramos-Román further avers in his opposition to summary judgment as to the retaliation claim that, after he complained of the sexual harassment, during the twenty-one (21) months prior to the Administration of Correction's claim of reorganization, he was left idle, placed in a job for which he was woefully unprepared, and not provided with a position description. (Exhibit 1, Ramos-Román's depo. p. 19). He was assigned to a series of posts that generally entailed no work at all and was asked to make up his position description. When some work was required, Ramos-Román was unprepared and unqualified for the same, and the situation persisted for some sixteen months. (Exhibit 1, pp. 19-22).

Although defendant Commonwealth claims having transferred other employees as a result of reorganization at the Department of Corrections, plaintiff Ramos-Román

submits those identified as his witnesses to the harassment were transferred shortly after they had testified on plaintiff's behalf. No information was provided by defendant Commonwealth as to when the other employees were removed. *Plaintiff's disputed ¶ 72; Exhibit 5, L. Rivera's depo. p. 26.* Also, notwithstanding the complaints of harassment, defendant Commonwealth continued to sent plaintiff Ramos-Román with the harasser Ms. Negrón to conferences. *Plaintiff's Disputed ¶122; Exhibit 5, L. Rivera's depo., pp. 17, 29.*

## LEGAL ANALYSIS

**A.    Exhaustion of Administrative Remedies.**

Based on the above undisputed facts, there is no need to discuss at length the exhaustion issue. It is clear from the record as undisputed that plaintiff Ramos-Román did exhaust and timely file in regards to both sexual harassment and retaliation and that defendants in this case were aware of the contentions submitted as to the actions by Ms. Negrón.

**B.    Discriminatory Acts - Retaliation and Sexual Harassment.**

Insofar as the discriminatory acts by defendant Commonwealth there are disputed issues of material fact that hinder summary disposition of plaintiff Ramos-Román's claims against Commonwealth. Having knowledge of the discrimination complaint and the sexual harassment situation with a third-party, defendant's investigation was not timely notified to plaintiff Ramos-Román, allowing the hostile work environment, the harassment and discrimination to continue without abatement. Generally, where sexual harassment is by a non-supervisory co-worker or a third-party, an employer is liable if the employee can

demonstrate the employer was negligent, that is, that it knew or should have known of the sexual harassment and failed to implement prompt and appropriate action. *See* Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27 (1st Cir. 2003).[9] Vicarious liability for the harassment subsists unless a proper affirmative defense is raised by showing the employer had a policy against sexual harassment and procedure for employees to present complaints and employer had timely and diligently investigated the harassment report and taken corrective measures.

Although defendant Commonwealth submits having some proceedings for employees to file complaints of harassment or discrimination, plaintiff Ramos-Román has disputed with the fact the investigator assigned to the case was not provided with the proceedings and policies, nor employees, such as plaintiff, were previously placed on notice these proceedings were available, and he was not notified about the results of the investigation until almost sixteen (16) months after. When the report was finally received, it indicated to plaintiff Ramos-Román for the first time the case had been closed almost nine (9) months before under the assumption the services of the harasser Ms. Negrón with Universidad Carlos Albizu had not been renewed and, thus, the harassment was considered moot. Still, Plaintiff Ramos-Román submitted the harassment continued even after expiration of Ms. Negrón's employment contract.

In addition, plaintiff Ramos-Román has presented sufficient indicia the harassment was offensive, continuous, pervasive, and not abating and disputed defendant

---

[9] Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002).

Commonwealth's allegation of prompt action. There is dispute on the factual issues of the reasonable prompt action taken as to plaintiff Ramos-Román complaint and notice of the investigation being provided some sixteen (16) months after indicating the case had been closed some nine (9) months before. More so when from the investigation conducted had reached the conclusion there had been indeed harassment by Ms. Negrón towards plaintiff Ramos-Román, that the conduct complained was unwelcome, and from the description of events available and examined by defendant concluded a sufficient showing of a hostile work environment.

Insofar as retaliation claims, regardless the harassment stems from a third-party, upon plaintiff Ramos-Román's complaints, he submits was subject of retaliation. Retaliation is most often a distinct and separate act of discrimination motivated by a discrete intention to punish a person who has rocked the boat by complaining about an unlawful employment practice. Noviello v. City of Boston, 398 F.3d 76, 87 (1st Cir. 2005) (*citations omitted*).

Defendant Commonwealth states the adverse employment action, if so considered, was not for retaliation but on the basis of a reorganization of the Department of Corrections that affected the agency as a whole.[10] On the other hand, plaintiff Ramos-Román has established a causal connection between the complaints of discrimination and the claimed adverse employment action. Still, a claim of reorganization may or may not mask actual

---

[10] In fact the Reorganization Plan submitted by Commonwealth as Exhibit 22, p. 6 shows it was Universidad Carlos Albizu the one to interview employees as to assessment for the need for transfer, remotion, dismissal, etc. that was retained by the Administration of Corrections in regards to the claimed reorganization. See translation submitted of same document at Docket No. 151.

discrimination or retaliation when considering a disputed factual scenario such as the one herein. DeNovellis v. Shalala, 135 F.3d 58 (1st Cir. 1998). Having plaintiff established a *prima facie* and sufficient case of discrimination, even one admitted through defendant's own investigation, reports and correspondence, the retaliation alleged is presented as bearing on a legitimate non-discriminatory reason of reorganization.

Under the McDonnell Douglas[11] rationale, the tricky question of motivation for defendant Commonwealth's actions would require further examination than just a proposition that a reorganization was underway at the same time plaintiff Ramos-Román was subject of discrimination in employment because of sexual harassment complaints.[12] However, because of the genuine dispute of relevant facts defendant Commonwealth is unable to prevail at summary judgment and place on plaintiff the burden to bring forth evidence that the proposed reorganization is but a pretext for discrimination.

A protected conduct closely followed by adverse action may justify an inference of retaliatory motive. Plaintiff Ramos-Román submitted not only his own retaliation but also those of individuals who testified on his behalf. Although defendant Commonwealth does not negate the transfer of those plaintiff identified as witnesses to discrimination, it submits other employees of the Department of Corrections were also transferred, without any reference as to when these other employees endured the transfers nor what positions

---

[11] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[12] The mere incantation of the mantra of "efficiency" is not a talisman insulating an employer from liability for invidious discrimination for an employer may not use an ostensibly legitimate reason for an adverse action as a pretext for discrimination that is prohibited by statute. Hodgens v. General Dynamics Corp., 144 F.3d 151, 166 (1st Cir. 1998) (citations omitted).

Pastor L. Ramos Román v. Commonwealth, et al
Civil No. 08-1378 (CVR)
Opinion and Order
Page No. 18

---

were involved. As such, an adverse action soon after an employee engages in protected activity under Title VII is strongly suggestive of retaliation. Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988).

Succinctly, the above relevant issues of disputed facts in the instant case, although not all relevant issues were herein discussed, hinder summary disposition as to the sexual harassment and retaliation claims. *See* Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39 (1st Cir. 2010) (genuine issues of material fact existed as to whether adverse action as to employee was motivated by retaliatory animus rather than company reorganization, precluding summary judgment).[13]

**C.  Pendent State Claims.**

Finally, there is no need to address summary dismissal of pendent state law claims since these claims were already dismissed by plaintiff Ramos-Román and partial judgment of dismissal was issued on February 20, 2009, as claimed by plaintiff. (Docket No. 49).

**CONCLUSION**

In view of the above, defendant Commonwealth of Puerto Rico's Motion for Summary Judgment is **DENIED**. (Docket No. 135).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of April of 2011.

         s/CAMILLE L. VELEZ-RIVE
         CAMILLE L. VELEZ-RIVE
         UNITED STATES MAGISTRATE JUDGE

---

[13] The showing of temporal proximity is sufficient to establish a *prima facie* case of causation. Temporal proximity alone can suffice to meet the relatively light burden of establishing a *prima facie* case of retaliation. DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008); Mariani-Colon v. Dep't of Homeland Sec. Ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007).